1
Garrick A. Hollander – State Bar No. 166316
ghollander@wcghlaw.com
2
**WINTHROP COUCHOT**
**GOLUBOW HOLLANDER, LLP**
3
660 Newport Center Drive, Suite 400
Newport Beach, CA 92660
4
Telephone: (949) 720-4100
Facsimile: (949) 720-4111
5

6
[Proposed] General Insolvency Counsel for XS Ranch
Fund VI, L.P., Debtor and Debtor-in-Possession
7

8
**UNITED STATES BANKRUPTCY COURT**

9
**NORTHERN DISTRICT OF CALIFORNIA**

10
**SAN FRANCISCO DIVISION**

11

12
In re:

13
XS RANCH FUND VI, L.P.,

14
                              Debtor and
15
                              Debtor-in-Possession.

Case No. 16-31367-DM-11

Chapter 11 Proceeding

**DECLARATION OF MICHAEL**
**VANDERLEY IN SUPPORT OF**
**DEBTOR'S MOTION FOR APPROVAL**
**OF THE ENGAGEMENT AGREEMENT**
**OF FORCE TEN PARTNERS TO**
**PROVIDE MICHAEL VANDERLEY AS**
**CHIEF RESTRUCTURING OFFICER OF**
**THE DEBTOR AND ASSISTANCE TO**
**CRO, *NUNC PRO TUNC* TO THE ENTRY**
**OF THE ORDER FOR RELIEF AND TO**
**DESIGNATE MR. VANDERLEY AS THE**
**RESPONSIBLE INDIVIDUAL PURSUANT**
**TO LOCAL RULE 4002-1(a)**

DATE:        June 30, 2017
TIME:        10:00 a.m.
PLACE.:      Courtroom 17
             450 Golden Gate Avenue, 16th Fl
             San Francisco, California
JUDGE:       Honorable Dennis Montali

Case: 16-31367     Doc# 44     Filed: 06/02/17     Entered: 06/02/17 17:58:07     Page 1 of 35     229567

I, Michael VanderLey, declare and state as follows:

1. The matters set forth herein are within my own personal knowledge, and, if called upon as a witness, I could and would competently testify thereto.

2. I submit this Declaration and the related exhibits in support of the Motion (the "Motion")[1] of the above-captioned debtor and debtor in possession (the "Debtor") for an order approving the engagement agreement (the "Engagement Agreement") dated April 15, 2017, by and between the Debtor and Force Ten Partners ("Force 10"), pursuant to which I have and will continue to serve as Chief Restructuring Officer ("CRO") and additional individuals (the "Additional Personnel") employed by Force Ten Partners ("Force 10") have and will continue to provide other critical crisis management services to the Debtor. The Engagement Agreement is attached hereto as Exhibit "1."

3. I am a Senior Advisor at Force 10. Force 10 is a specialty financial advisory services firm, specializing in the restructuring of companies, providing solutions to complex restructuring and turnaround matters, and board level agenda items. Force 10 applies a unique mix of skill sets and experience to address matters of the utmost importance to the Debtor, such as management of land entitlement projects, capital raising, and sales of assets, managing through a bankruptcy and other top level, non-typical business challenges. A copy of Force 10's resume is attached hereto as Exhibit "2" and is incorporated herein by this reference.

4. The professional who comprise Force 10 have substantial experience in advising constituents in Chapter 11, including debtors, shareholders, lenders and creditors in Committees and are regularly employed as a court appointed Chief Restructuring Officer, liquidating agent, plan administrator and other fiduciary positions.

5. I have been the lead professional on numerous high-profile and complex engagements, including engagements providing financial restructuring and reorganization services to companies in Chapter 11 cases and to companies in out-of-court restructurings, and to creditors of companies in Chapter 11 cases.

---

[1] Capitalized terms not defined herein have the same meaning ascribed in the Motion.

3

DECLARATION OF MICHAEL VANDERLEY IN SUPPORT OF MOTION FOR APPROVAL OF ENGAGEMENT AGREEMENT OF FORCE 10 PARTNERS AND TO DESIGNATE RESPONSIBLE INDIVIDUAL PURSUANT TO LOCAL RULE 4002-1(a)

229567

Case: 16-31367    Doc# 44    Filed: 06/02/17    Entered: 06/02/17 17:58:07    Page 2 of 35

6.      Over the course of my 30+ year career in the real estate and real estate finance industries and as an advisor to publicly-traded and privately-held real estate owners and investors and domestic and international financial institutions, I have had and continue to have extensive and diversified experience in real estate matters including special-use properties in various stages of development ranging from raw land to operating properties.

7.      I have extensive experience providing crisis management and financial restructuring services for real estate clients. I have substantial experience and knowledge regarding restructuring of complex real estate transactions and disposition of real estate projects. I have managed several billion dollars of debt restructurings on behalf of real estate clients.

8.      I have been involved in multiple transactions within every major real estate asset class, and have advised on, originated, acquired and/or restructured investment positions at every level of the capital structure. I have prepared numerous analyses of the appropriate rate of interest on plans of reorganization; I also frequently conduct real estate valuations, market and cost analyses and financial feasibility analyses, both for entities in bankruptcy and not.

9.      I am very familiar with the availability, pricing and terms of debt and equity financial for real estate projects and ventures, including underwriting, criteria and procedures for commercial loans. My professional background includes 13 years' experience originating, underwriting, capitalizing and asset managing real property-related equity and debt investments in markets across the United States, plus over 15 years of restructuring, advisory and consulting experience.

10.      Prior to joining Force 10, I was a Senior Managing Director in the Real Estate Solutions group of the Corporate Finance segment of FTI Consulting ("FTI"), and led the Real Estate Capital Markets practice for FTI Capital Advisors, LLC, an investment banking subsidiary of FTI. From 1998 through early 2009, I was employed primarily as an investment principal, both in an equity investment/ownership. operational capacity (Chief Investment Officer – Sagamore Equities, LLC), and as a lender, providing senior secured, unsecured revolver and term loan, mezzanine debt and preferred equity (Director – Calyon Corporate and Investment Bank; Senior Vice President, Structured Finance -- Essex Property Trust; Vice President, Structured Finance –

Case: 16-31367      Doc# 44      Filed: 06/02/17      Entered: 06/02/17 17:58:07      Page 3 of 35

1  Archstone).  From the late 1980's through late 1990's, and again since joining FTI, I have served

2  in numerous capacities as a financial advisor relating to both in-court and out-of-court

3  restructurings and workouts.  I have advised private owners, public company boards of directors,

4  senior management teams, individual banks, lender syndicates, and loan servicing organizations

5  with regard to equity and debt financings, asset sales, financial restructuring, valuations, financial

6  and operational due diligence, and litigation matters.  Some of the bankruptcy cases in which I

7  have been involved include:  Pointe San Diego; Circle K; Eddie Haggar Limited; House of Fabrics;

8  Globelle; Station Casinos, Inc.; Nevada Cancer Institute; Gottschalks, Inc.; Great Atlantic &

9  Pacific Tea Company; Crystal Cathedral Ministries; Spectre Performance; Hostess Brands; MSR

10 Resort Golf Course LLC, e al; Modern Honolulu; Circus and Eldorado Joint Venture, Silver

11 Legacy Capital Corp; BHFS I, LLC, et al; No Apples II, Moses Lake I, LLC; LCI Holding

12 Company, Inc.; Meridian Sunrise Village, LLC; SR Real Estate Holdings, LLC; Jerry's Nugget,

13 Inc. and Spartan Gaming, LLC; Mi Pueblo Foods; PRM Family Holding Company, LLC, et al;

14 Fresh & Easy Neighborhood Market, Inc., et al.; City of Detroit, Michigan; Variant Holding

15 Company, LLC; Shilo Inn Twin Falls, Boise Airport, Nampa Blvd, Newberg, Seaside East, Moses

16 Lake and Rose Garden; Hancock Fabrics, SFX Entertainment, and Freedom Communications, Inc.

17     11.     As further detailed in the Motion and supporting Memorandum of Points and

18 Authorities ("Memorandum"), the Debtor seeks an order approving the terms of the Engagement

19 Agreement, *nunc pro tunc* to the date of the entry of the order for relief, pursuant to which the

20 Debtor has employed Force 10 to provide restructuring and crisis management services, me to act

21 as the CRO of the Debtor, and other professionals employed by Force 10 to provide professional

22 services as deemed necessary.

23     12.     Since becoming involved with the Debtor, Force 10 and I have immersed ourselves

24 in the Debtor's financial matters and business.  I am familiar with the current state of the Debtor's

25 business and am in the process of assisting the Debtor with the development and consideration of

26 various restructuring strategies, including, but not limited to, the disposition of certain assets of the

27 Debtor's subsidiaries.  A true and correct copy of my resume is attached hereto as Exhibit "3" and

28 is incorporated herein by this reference.

5

**DECLARATION OF MICHAEL VANDERLEY IN SUPPORT OF MOTION FOR APPROVAL OF ENGAGEMENT AGREEMENT**
**OF FORCE 10 PARTNERS AND TO DESIGNATE RESPONSIBLE INDIVIDUAL PURSUANT TO LOCAL RULE 4002-1(a)**

Case: 16-31367    Doc# 44    Filed: 06/02/17    Entered: 06/02/17 17:58:07    Page 4 of 35    229567

13.     In my capacity as CRO, I have been and will continue to provide a level of independent oversight over the Debtor and its operations.  My services are necessary to preserve and maximize the Debtor's value for the benefit of creditors of the Debtor's estate.

14.     Force 10 will assist in managing all aspects of the Debtor's case leading to the restructuring/sale of the Debtor's assets and liabilities.  In addition, Force 10 will assist in managing the Debtor's day-to-day operations, including cash management, financial reporting and business strategy.  Force 10 will provide restructuring and crisis management services as requested by the Debtor and described in the Engagement Agreement, including, but not limited to the following:

    a.     Assistance in the formulation and preparation of the Debtor's disclosure statement and plan of reorganization, including the creation of financial projections and supporting methodology, key assumptions and rationale; appropriate financial analysis and evaluation of the Debtor's operations; and supporting financial statements and pro forma budgets and projections;

    b.     Provide assistance in connection with any motions, responses or other court activity as dictated by legal counsel;

    c.     Assist the CRO in negotiation with the Debtor's creditors and responding to any objections to the bankruptcy plan by claim holders;

    d.     Assist the Debtor and its insolvency legal counsel in preparing or responding to any competing disclosure statements and Chapter 11 plans;

    e.     If required, conducting, preparing and providing expert witness evaluations and opinions, declaration and reports, depositions and in-court testimony; and

    f.     Perform such financial advisory services as may be required in the interests of the Debtor.

15.     The Debtor agrees that Force 10 will provide me to serve in the capacity of CRO.  I will continue to operate in the capacity of CRO under the protection of Chapter 11 of the Bankruptcy Code.  In my capacity as CRO, I will report directly to the Debtor's Board of Directors.  My duties as CRO include, but are not limited to the following:

**DECLARATION OF MICHAEL VANDERLEY IN SUPPORT OF MOTION FOR APPROVAL OF ENGAGEMENT AGREEMENT OF FORCE 10 PARTNERS AND TO DESIGNATE RESPONSIBLE INDIVIDUAL PURSUANT TO LOCAL RULE 4002-1(a)**

Case: 16-31367     Doc# 44     Filed: 06/02/17     Entered: 06/02/17 17:58:07     Page 5 of 35

229567

| | |
|---|---|
| 1 | a.     Manage the affairs of the Debtor, preside over raising capital for the Debtor; |
| 2 | b.     Evaluate and develop, if feasible, restructuring plans or strategic alternatives |
| 3 | for maximizing the value of the Debtor's assets. The CRO shall determine which plan(s) or |
| 4 | alternative(s) are appropriate under the circumstances and the CRO shall use commercially |
| 5 | reasonable efforts to attempt to implement such plan(s) or alternative(s); |
| 6 | c.     Assist the Debtor in identifying, reviewing, negotiating and procuring |
| 7 | debtor-in-possession and exit financing; |
| 8 | d.     Evaluate potential sale(s) of the Debtor's assets; and |
| 9 | e.     Assist the Debtor regarding the marketing of its assets, including (i) assisting |
| 10 | interest parties in performing due diligence investigations on the Debtor and its assets, |
| 11 | including assisting in the development and management of a data room, and (ii) attempting |
| 12 | to obtain multiple offers for the Debtor's assets and engage in negotiations with interested |
| 13 | parties to maximize proceeds from the sale of these assets; and |
| 14 | f.     Perform the typical duties of a CRO, and other services as mutually agreed |
| 15 | to by me and the Debtor. |
| 16 | 16.     In my capacity as CRO, I will not be a member of the Board of Directors, but I am |
| 17 | expected to participate in Board meetings in order to report on the progress of the turnaround and |
| 18 | restructuring initiatives. |
| 19 | 17.     To address and handle the above responsibilities on behalf of the Debtor, I will be |
| 20 | assisted by Additional Personnel with appropriate professional experience provided through |
| 21 | Force 10 at various levels, all of whom have a wide range of skills and abilities related to this type |
| 22 | of assignment. All such Additional Personnel will be provided under and subject to the terms of |
| 23 | the Engagement Agreement. |
| 24 | 18.     I believe that I and the members and associates of Force 10 who may perform |
| 25 | services in this case are well qualified to perform the services requested by the Debtor. |
| 26 | 19.     None of the services that Force 10 will render in connection with the Debtor's |
| 27 | Chapter 11 case will be duplicative of the services rendered by any of the other professionals |
| 28 | employed by the Debtor in this case. |

7

DECLARATION OF MICHAEL VANDERLEY IN SUPPORT OF MOTION FOR APPROVAL OF ENGAGEMENT AGREEMENT
OF FORCE 10 PARTNERS AND TO DESIGNATE RESPONSIBLE INDIVIDUAL PURSUANT TO LOCAL RULE 4002-1(a)

Case: 16-31367    Doc# 44    Filed: 06/02/17    Entered: 06/02/17 17:58:07    Page 6 of 35

229567

20.     Notwithstanding anything in the Engagement Agreement to the contrary, the Debtor is permitted to indemnify those persons serving as corporate officers on the same terms as provided to the Debtor's other officers and directors under the corporate bylaws and applicable state law. There shall be no other indemnification of Force 10 or its affiliates.

21.     Notwithstanding any provisions of the Engagement Agreement to the contrary, consistent with the "Jay Alix Protocol" ("Protocol") implemented by the Office of the United States Trustee, Force 10 and I agree that:

        a.     In the event the Debtor seeks to have any of the Additional Personnel assume executive officer positions other than me, or to materially change the terms of the engagement by modifying the functions of the executive officer personnel, a motion to modify the employment as such will be filed.

        b.     No principal, employee, or independent contractor of Force 10 and its affiliates will serve as a director of the Debtor during the pendency of the Debtor's chapter 11 case.

        c.     For a period of three (3) years after the conclusion of the engagement, neither Force 10 nor any of its affiliates will make any investments in the Debtor.

22.     The Debtor and Force 10 have agreed to the proposed compensation and payment structure summarized below and set forth in detail in the Engagement Agreement (the "Fee Structure"):

        a.     <u>CRO Monthly Fee</u>:  The Debtor will pay Force 10 $50,000 per month for the CRO services and duties described in paragraph 1(a) and 1(b) of the Engagement Agreement.

        b.     <u>Standard Hourly Rate</u>:  The Debtor will pay Force 10 customary hourly rates for services described in paragraph 1(c) of the Engagement Agreement.  The following are Force 10's hourly rates:

| Partners | $450 - $650 |
| Other Professional Staff | $225 - $450 |
| Administrative / Paraprofessional | $60 - $225 |

        c.     <u>Payment of Fees and Expenses</u>.  Force 10 will be reimbursed by the Debtor for out of pocket expenses of the CRO and other Force 10 personnel, incurred in

DECLARATION OF MICHAEL VANDERLEY IN SUPPORT OF MOTION FOR APPROVAL OF ENGAGEMENT AGREEMENT OF FORCE 10 PARTNERS AND TO DESIGNATE RESPONSIBLE INDIVIDUAL PURSUANT TO LOCAL RULE 4002-1(a)

Case: 16-31367     Doc# 44     Filed: 06/02/17     Entered: 06/02/17 17:58:07     Page 7 of 35

229567

connection with this assignment, such as out of town travel, and lodging, duplications, computer research, messenger services and telephone charges. Force 10 shall be reimbursed by the Debtor for the reasonable fees and expenses of its counsel incurred in the preparation, negotiations, enforcement and approval of the Engagement Agreement. All fees and expenses due to Force 10 will be billed on a weekly basis or, at Force 10's discretion, more frequently, and shall be due and payable on each Monday during the term of the Engagement Agreement for the prior calendar week.

       d.    <u>Bonus</u>: The Debtor has agreed to pay to Force 10 a performance bonus ("Bonus") upon achievement of a positive result for the Debtor's estate. In the event that a positive result is achieved for the Debtor, Force 10 shall be paid a reasonable performance Bonus, subject to this Court's review and final approval. In particular, the Debtor has agreed to the following bonuses.

       i.    <u>Debt Equity, or Debtor-in-Possession Financing Bonus</u>. A "Financing Transaction" is any transaction or series of related transactions that constitutes the placement, raising or issuance of any form of equity, equity-linked or debt securities (including, without limitation, any convertible securities, preferred stock, unsecured, non-senior or subordinated debt securities, and/or senior notes or bank debt) or any loan or other financing, from any source excluding current owners, shareholders or employees of the Debtor.

       Upon closing of each Financing Transaction, Force 10, on behalf of the CRO shall earn, and the Debtor shall immediately pay directly from the escrow proceeds of such Financing transaction (as aa cost of such Financing Transaction) a cash bonus ("Financing Transaction Bonus") equal to the sum of (a) 5% of the gross proceeds of any senior secured credit facility provided by a lender raised or committed to the Debtor, (b) 5% of all other indebtedness raised or committed to the Debtor, (c) and 5% of the gross proceeds of all equity or equity-linked securities (including without limitation, convertible securities and preferred stock, and

9

DECLARATION OF MICHAEL VANDERLEY IN SUPPORT OF MOTION FOR APPROVAL OF ENGAGEMENT AGREEMENT OF FORCE 10 PARTNERS AND TO DESIGNATE RESPONSIBLE INDIVIDUAL PURSUANT TO LOCAL RULE 4002-1(a)

229567

Case: 16-31367    Doc# 44    Filed: 06/02/17    Entered: 06/02/17 17:58:07    Page 8 of 35

membership interests and limited or general partnership interests) sold, placed or otherwise committed.

Any non-cash consideration provided to or received in connection with the Financing Transaction (Including but not limited to intellectual or intangible property) shall be valued for purposes of calculating the Financing Transaction Bonus as equity.

It is understood and agreed that if the proceeds of any such Financing Transaction are to be funded in more than one stage, Force 10, on behalf of the CRO, shall be entitled to its applicable compensation hereunder upon the closing date of each stage. The Financing Transaction Bonus(es) shall be payable in respect of any sale of securities whether such sale has been arranged by the CRO, by another agent or directly by the Debtor during the term of this engagement or thereafter subject to Termination below.

ii.     Restructuring or Dismissal Bonus. As used in the Engagement Agreement, the term "Restructuring" means, collectively, any restructuring, reorganization, and/or recapitalization proposed by either the Debtor or any other party-in-interest (including, but not limited to, a Plan of Reorganization pursuant to Chapter 11 U.S. Code § 1129 of the United States Bankruptcy Code).

When a Restructuring that is confirmed by the Bankruptcy Court (the "Plan") becomes effective (the "Plan Effective Date") the Debtor shall pay Force 10, on behalf of the CRO, a bonus equal to 1% of the net present value (utilizing a discount rate of 7.5% of the projections that are either set forth in the plan or disclosure statement or underlying the projections set forth in the plan or disclosure statement.

As used in the Engagement Agreement, the term "Dismissal" means a dismissal pursuant to 11 U.S. Code § 1112. In the event of a Dismissal in which the Debtor or a successor entity will continue operations, the Debtor shall pay Force 10, on behalf of the CRO, a bonus equal to 1% of the net present value (utilizing a

DECLARATION OF MICHAEL VANDERLEY IN SUPPORT OF MOTION FOR APPROVAL OF ENGAGEMENT AGREEMENT
OF FORCE 10 PARTNERS AND TO DESIGNATE RESPONSIBLE INDIVIDUAL PURSUANT TO LOCAL RULE 4002-1(a)

Case: 16-31367     Doc# 44     Filed: 06/02/17     Entered: 06/02/17 17:58:07     Page 9 of 35

229567

discount rate of 7.5%) of the projections either used by the Debtor to secure the dismissal or any agreement or understanding leading with any party-in-interest leading to the Dismissal. The Debtor acknowledges that a success fee paid to Force 10 under section 2(c)(ii) of the Engagement Agreement may be more than $2 million.

iii.    <u>Asset Sale Bonus</u>. In the event of a sale of some or all of the Debtor's assets, Force 10, on behalf of the CRO, will receive a cash bonus of 2.5% of the asset purchase price, at the time of each closing. This success fee will be in addition to any brokerage fees paid to any third-party.

23.    Force 10 shall file with the Court, with copies to the United States Trustee and any official committee, a monthly report of staffing on the engagement for the previous month. Such report shall include the names and functions filled by the individuals assigned. All staffing shall be subject to review by the Court in the event an objection is filed.

24.    Force 10 shall file with the Court (and serve copies on the United States Trustee and any official committee appointed in this case contemporaneously with such filing) reports of compensation earned and expenses incurred on at least a quarterly basis. Such reports shall contain summary charts that describe services provided, identify the compensation earned by each executive officer and staff employee provided, and itemize the expenses incurred. Time records for all Force 10 Additional Personnel other than the CRO shall (i) be appended to the reports, (ii) contain detailed time entries describing the task(s) performed, and (iii) be organized by project category.

25.    When Force 10 personnel are providing services at an hourly rate, such personnel shall record their time entries in increments of no greater than one-half hour (0.5). All compensation shall be subject to review by the Court in the event an objection is filed. The first quarterly report will be submitted forty-five (45) days from the end of the first calendar quarter after the entry of the order for relief, and will cover the period to and including the last day of the first quarter after the entry of the order for relief. This procedure will continue at three month intervals thereafter.

DECLARATION OF MICHAEL VANDERLEY IN SUPPORT OF MOTION FOR APPROVAL OF ENGAGEMENT AGREEMENT
OF FORCE 10 PARTNERS AND TO DESIGNATE RESPONSIBLE INDIVIDUAL PURSUANT TO LOCAL RULE 4002-1(a)

229567

26. Because Force 10 and I are not being employed as professionals under Bankruptcy Code Section 327, Force 10 will not be submitting regular fee applications pursuant to sections 330 and 331 of the Bankruptcy Code. Force 10 will, however, submit the reports described above.

27. In connection with our proposed retention by the Debtor, Force 10 has conducted an investigation to ascertain Force 10's connections with the Debtor and various parties in interest in the case. Force 10's investigation has included, among other things, a review of Force 10's internal computer database containing the names of persons and entities that have previously engaged Force 10. To the best of my knowledge and except to the extent disclosed below, Force 10 does not hold any interest adverse to the interests of the Debtor's estate.

28. By way of disclosure, Force 10 personnel may have business associations with certain creditors of the Debtor or counsel or other professionals involved in this case on matters unrelated to this case. In addition, in the ordinary course of this business, Force 10 may engage counsel or other professionals in unrelated matters who now represent, or in the future may represent, creditors or other interested parties in this case.

29. To the best of my knowledge, Force 10 is a "disinterested person" as that term is defined in section 101(14) of title 11 of the United States Code (the "Bankruptcy Code"), as modified by section 1107(b) of the Bankruptcy Code, in that Force 10:

    a.    is not a creditor, equity security holder or insider of the Debtor;

    b.    is not and was not, within 2 years before the date of the filing of the petition, a director, officer or employee of the Debtor, with the exception of my being appointed CRO immediately following the filing as a part of the restructuring services provided by Force 10 to the Debtor;

    c.    does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, in connection with, or interest in, the Debtor, or for any other reason.

30. Moreover, except as otherwise provided in this declaration, to the best of my knowledge, information and belief, insofar as I have been able to ascertain after due inquiry, other than in connection with this bankruptcy case and Force 10's provision of services to the Debtor

DECLARATION OF MICHAEL VANDERLEY IN SUPPORT OF MOTION FOR APPROVAL OF ENGAGEMENT AGREEMENT
OF FORCE 10 PARTNERS AND TO DESIGNATE RESPONSIBLE INDIVIDUAL PURSUANT TO LOCAL RULE 4002-1(a)
229567

1  prior to the Petition Date, Force 10 does not (a) have any connection with the Debtor, its creditors

2  or any other party in interest herein, the United States Trustee, anyone employed in the Office of

3  the United States Trustee, or any United States Bankruptcy Judge or District Judge for the

4  Northern District of California, San Francisco Division or (b) have any connection with or hold or

5  represent any interest materially adverse to the Debtor, its estate, its creditors or any other party in

6  interest herein in the matters for which Force 10 is proposed to be retained.

7       31. To the best of my knowledge, Force 10 has not been retained to assist any entity or

8  person other than the Debtor on matters relating to, or in connection with this case. If this Court

9  approves the proposed employment outlined in the Engagement Agreement, Force 10 will not

10  accept any engagement or perform any services in this case for any entity or person other than the

11  Debtor. Force 10 may, however, continue to provide accounting services to, and engage in

12  commercial or professional relationships with, entities or persons that may be creditors of the

13  Debtor or parties-in-interest in this chapter 11 case, provided, however, that such services do not

14  and will not relate to, or have any direct connection with, this chapter 11 case.

15       32. Force 10 has not agreed to share with any person or entity any compensation

16  received by it in the Debtor's case, except as among the members, associates, and employees of

17  Force 10.

18       33. As of the commencement of the Debtor's involuntary proceedings, Force 10 did not

19  hold a prepetition claim against the Debtor for services rendered but does hold an involuntary gap

20  claim in the amount of $148,517.63.

21       34. Force 10 has not received any promises as to payment or compensation in

22  connection with this Bankruptcy Case other than in accordance with the provisions of the

23  Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and as disclosed herein.

24       35. The Engagement Agreement contains standard indemnification and limitation of

25  liability language with respect to Force 10's services. The Debtor shall indemnify Force 10 and me

26  ///

27

28

**DECLARATION OF MICHAEL VANDERLEY IN SUPPORT OF MOTION FOR APPROVAL OF ENGAGEMENT AGREEMENT OF FORCE 10 PARTNERS AND TO DESIGNATE RESPONSIBLE INDIVIDUAL PURSUANT TO LOCAL RULE 4002-1(a)**

229567

1  as CRO to the same extent as the most favorable indemnification it extends to its officers or

2  directors, whether under the Debtor's bylaws, its certificate of incorporation, or otherwise, and no

3  reduction or termination in any of the benefits provided under any such indemnities shall affect the

4  benefits provided to Force 10 and me as CRO. I shall be covered as an officer under the Debtor's

5  existing director and officer liability insurance policies if any. The Debtor shall also maintain any

6  such insurance coverage, if any currently exists, for me as CRO for not less than two years

7  following the date of the termination of such officer's services hereunder.

8      36.  I believe the indemnity provisions are a reasonable term and condition of Force 10's

9  engagement and were, along with all terms of the Engagement Agreement, negotiated by the

10  Debtor and Force 10 at arm's-length and in good faith. I believe that the indemnity provisions are

11  comparable to those indemnification provisions generally obtained by crisis management firms of

12  similar stature to Force 10 and for comparable engagements, both in and out of court.

13      I declare under penalty of perjury under the laws of the state of California and the United

14  States of America that the foregoing is true and correct to the best of my knowledge.

15      Executed this 2nd day of June 2017 at San Francisco, California.

16

17                                          Michael VanderLey

18

19

20

21

22

23

24

25

26

27

28

**DECLARATION OF MICHAEL VANDERLEY IN SUPPORT OF MOTION FOR APPROVAL OF ENGAGEMENT AGREEMENT
OF FORCE 10 PARTNERS AND TO DESIGNATE RESPONSIBLE INDIVIDUAL PURSUANT TO LOCAL RULE 4002-1(a)**

229567

# EXHIBIT "1"

**FORCE 10**
**P A R T N E R S**

April 15, 2017

Mr. James Foster
Via email

RE:     Engagement of Force Ten Partners, LLC as Chief Restructuring Officer and Financial
        Advisor for XF Ranch Fund VI, LP a California limited partnership (Case No. 3:16-bk-
        31367).

Dear Mr. Foster:

This letter confirms and sets forth the terms and conditions of the engagement between Force
Ten Partners, LLC ("Force 10") and XS Ranch Fund VI, LP (herein referred to as the "Debtor")
including the scope of the services to be performed and the basis of compensation for those
services. Force 10 and the Debtor understand that this agreement is subject to the approval of
the United States Bankruptcy Court.

1.     <u>Description of Services.</u>

       a.     <u>Officer.</u> In connection with this engagement, Force 10 shall provide a
              designated person to serve in the capacity of Chief Restructuring Officer
              (the "CRO") of the Debtor. The CRO will be mutually acceptable to the
              Debtor and Force 10.

       b.     <u>Duties and Powers of the CRO.</u>

              (i)     Manage the affairs of the Debtor, and preside over raising capital
                      for the Debtor;

              (ii)    Evaluate and develop, if feasible, restructuring plans or strategic
                      alternatives for maximizing the value of the Debtor's assets. The
                      CRO shall determine which plan(s) or alternative(s) are appropriate
                      under the circumstances and the CRO shall use commercially
                      reasonable efforts to attempt to implement such plan(s) or
                      alternative(s).

              (iii)   Assist the Debtor in identifying, reviewing, negotiating and
                      procuring Debtor-in-Possession and Exit financing;

              (iv)    Evaluate potential sale(s) of the Debtor's assets; and assist the
                      Debtor regarding the marketing of its assets;

Exhibit 1, Page 15

<ol type="a" start="1">
<li>Assist interested parties in performing diligence investigations on the Debtor and its assets, including assisting in the development and management of a data room; and</li>
<li>Attempt to obtain multiple offers for the Debtors assets and engage in negotiations with interested parties to maximize proceeds from the sale of these assets.</li>
</ol>

c. <u>Additional Personnel.</u>  To address and handle the CRO responsibilities on behalf of the Debtor, Force 10 will provide additional personnel with appropriate professional experience. The services to be provided by Force 10 may include, but not be limited to, the following:

    (i) Assist in the formulation and preparation of the Debtor's disclosure statement and plan of reorganization, including the creation of financial projections and supporting methodology, key assumptions and rationale; appropriate financial analysis and evaluation of the Debtor's operations; and supporting financial statements and proforma budgets and projections;

    (ii) Provide assistance in connection with any motions, responses or other court activity as dictated by legal counsel;

    (iii) Assist the CRO in negotiations with the Debtor's creditors and responding to any objections to the bankruptcy plan by claim holders;

    (iv) Assist the Debtor and its insolvency legal counsel in preparing or responding to any competing disclosure statements and Chapter 11 plans;

    (v) If required, conducting, preparing and providing expert witness evaluations and opinions, declaration and reports, depositions and in-court testimony; and

    (vi) Perform such financial advisory services as may be required in the interests of the Debtor.

d. <u>Reporting.</u>  The CRO shall report to Jim Foster.

e. <u>Employment by Force 10.</u>  The CRO will continue to be employed by Force 10 and while rendering services to the Debtor, will continue to work with other personnel at Force 10 on unrelated matters, which will not unduly interfere with services under this engagement. With respect to the Debtor, the CRO shall operate under the terms of this Agreement and Force 10 shall have no liability to the Debtor for any acts or omissions of such officers.

e. <u>Projections; Reliance; Limitation of Duties.</u>  You understand that the services to be rendered by the CRO may include the preparation of projections and other forward-looking statements and that numerous factors can affect the actual results of the Debtor's operations, which may materially and adversely differ from those projections and other forward-looking statements.  Also, the CRO will be relying on information provided

Force 10 Partners

Case: 16-31367   Doc# 44   Filed: 06/02/17   Entered: 06/02/17 17:56:03   Page 16 of
35

by other members of the Debtor's management and its accountants in the preparation of those projections and other forward-looking statements. Neither the CRO nor Force 10 makes any representation or guarantee that an appropriate restructuring proposal or strategic alternative can be formulated for the Debtor, that any restructuring proposal or strategic alternative selected by Force 10 and the CRO will be more successful than all other possible restructuring proposals or strategic alternatives, that restructuring is the best course of action for the Debtor or, if formulated, that any proposed restructuring plan or strategic alternative will be accepted by any of the Debtor's creditors, shareholders and other constituents.

Matters such as this are fluid, and the specific scope of services may change. In the event circumstances arise such that our scope of services expands, we will discuss such occurrences with the Debtor before implementing. Further, should the Debtor require services that are within the general scope of Force 10's business, the Debtor will make a reasonable effort to employ Force 10 for such services.

2.    <u>Compensation.</u>  All fees shall be subject to and conditioned on the approval of the Bankruptcy Court, and the United States Trustee Guidelines.

    a.    <u>CRO.</u>

The Debtor will pay to Force 10 $50,000 per month for the CRO services duties described under 1(a) and 1(b) above.

    b.    <u>Financial Advisory Services.</u>

The Debtor will pay Force 10 customary professional hourly rates for the services described under 1(c) above. The following are Force 10's hourly rates:

| | |
|---|---|
| Partners | $450- $650 |
| Other Professional Staff | $225 - $450 |
| Administrative/paraprofessional | $60   - $225 |

Also, Force 10 will be reimbursed by the Debtor for out-of-pocket expenses of the CRO and other Force 10 personnel, incurred in connection with this assignment, such as out-of-town travel and lodging, duplications, computer research, messenger services and telephone charges. Also, Force 10 shall be reimbursed by the Debtor for the reasonable fees and expenses of its counsel incurred with the preparation, negotiation, enforcement and approval of this engagement agreement.

    c.    <u>CRO Bonus.</u>  Force 10, on behalf of the CRO, will also be paid a bonus/success fee on the distinct scenarios outlined below:

        (i)    <u>Debt, Equity, or Debtor-in-Possession Financing Bonus.</u>

A."Financing Transaction" is any transaction or series of related transactions that constitutes the placement, raising or issuance of

Force 10 Partners

Case: 16-31367    Doc# 44    Filed: 06/02/17    Entered: 06/02/17 17:55:03    Page 23 of 37
35

any form of equity, equity-linked or debt securities (including, without limitation, any convertible securities, preferred stock, unsecured, non-senior or subordinated debt securities, and/or senior notes or bank debt) or any loan or other financing, from any source excluding current owners, shareholders or employees of the Debtor.

Upon closing of each Financing Transaction, Force 10, on behalf of the CRO, shall earn, and the Debtor shall immediately pay directly from the escrow proceeds of such Financing Transaction (as a cost of such Financing Transaction) a cash bonus ("Financing Transaction Bonus") equal to the sum of (a) 5% of the gross proceeds of any senior secured credit facility provided by a lender raised or committed to the Debtor, (b) 5% of all other indebtedness raised or committed to the Debtor, (c) and 5% of the gross proceeds of all equity or equity-linked securities (including without limitation, convertible securities and preferred stock, and membership interests and limited or general partnership interests) sold, placed or otherwise committed.

Any non-cash consideration provided to or received in connection with the Financing Transaction (including but not limited to intellectual or intangible property) shall be valued for purposes of calculating the Financing Transaction Bonus as equity.

It is understood and agreed that if the proceeds of any such Financing Transaction are to be funded in more than one stage, Force 10, on behalf of the CRO, shall be entitled to its applicable compensation hereunder upon the closing date of each stage. The Financing Transaction Bonus(es) shall be payable in respect of any sale of securities whether such sale has been arranged by the CRO, by another agent or directly by the Debtor during the term of this engagement or thereafter subject to Termination below.

(ii)    <u>Restructuring or Dismissal Bonus.</u>

As used this in Agreement, the term "Restructuring" shall mean, collectively, any restructuring, reorganization, and/or recapitalization proposed by either the Debtor or any other party-in-interest (including, but not limited to, a Plan of Reorganization pursuant to Chapter 11 U.S. Code § 1129 of the United States Bankruptcy Code).

When a Restructuring that is confirmed by the Bankruptcy Court (the "Plan") becomes effective (the "Plan Effective Date") the Debtor shall pay Force 10, on behalf of the CRO, a bonus equal to 1% of the net present value (utilizing a discount rate of 7.5%) of the projections that are either set forth in the Plan disclosure statement or underlying the projections set forth in the Plan disclosure statement.

As used in this Agreement, the term "Dismissal" shall mean a dismissal pursuant to 11 U.S. Code § 1112. In the event of a

Case: 16-31367    Doc# 44    Filed: 06/02/17    Entered: 06/02/17 14:55:03    Page 18 of 35

Dismissal in which the Debtor or a successor entity will continue operations, the Debtor shall pay Force 10, on behalf of the CRO, a bonus equal to 1% of the net present value (utilizing a discount rate of 7.5%) of the projections either used by the Debtor to secure the dismissal or any agreement or understanding leading with any party-in-interest leading to the Dismissal.

The Debtor acknowledges that a success fee paid to Force 10 under section 2(c)(ii) may be more than $2 million.

(iii)    <u>Asset Sale Bonus.</u>

In the event of a sale of some or all of the Debtor's assets, Force 10, on behalf of the CRO, will receive a cash bonus of 2.5% of the asset purchase price, at the time of each closing. This success fee will be in addition to any brokerage fees paid to any third-party.

3.    <u>Termination.</u>

This agreement may be terminated immediately by either party, in its sole discretion, for any reason whatsoever.  Upon and after termination of this Agreement, Force 10 shall be entitled to all unpaid expenses incurred under this Agreement, the remaining unpaid balance of any CRO fees, any hourly fees, and any success fees if the Debtor enters into a Financing Transaction with a party introduced by the CRO or Force 10 within one year of termination.

4.    <u>No Audit, Duty to Update.</u>

It is understood that the CRO and Force 10 are not being requested to perform an accounting audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA, SEC or other state or national professional or regulatory body.  Force 10 is entitled to rely on the accuracy and validity of the data disclosed or supplied by employees and representatives of the Debtor.  The CRO and Force 10 are under no obligation to update data or review any other areas.

5.    <u>No Third-Party Beneficiary.</u>

The Debtor acknowledges that all advice (written or oral) given by Force 10 in connection with this engagement is intended solely for the benefit and use of the Debtor (limited to its Board of Directors and management) in considering the matters to which this engagement relates. The Debtor agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks referred to herein without Force 10's prior approval (which shall not be unreasonably withheld), except as required by law.

6.    <u>Conflicts.</u>

Force 10 is not currently aware of any relationship that would create a conflict of interest with the Debtor or those parties-in-interest of which you have made us aware.  Because Force 10 is a consulting firm that serves clients in numerous cases, both in and out of court, it is possible that Force 10 may have rendered

Case: 16-31367    Doc# 44    Filed: 06/02/17    Entered: 06/02/17 15:56:03    Page 22 of
35

services to or have business associations with other entities or people which had or have or may have relationships with the Debtor, including creditors of the Debtor. In the event you accept the terms of this engagement, Force 10 will not represent, and Force 10 has not represented, the interests of any such entities or people in connection with this matter.

7.    Confidentiality / Non-Solicitation.

The CRO and Force 10 shall keep confidential all non-public information received from the Debtor in conjunction with this engagement, except (I) as requested by the Debtor or its legal counsel; (ii) as required by legal proceedings or (iii) as reasonably required in the performance of this engagement. All obligations as to non-disclosure shall cease as to any part of such information to the extent that such information is or becomes public other than as a result of a breach of this provision.

8.    Indemnification.

The Debtor shall indemnify Force 10 and the CRO to the same extent as the most favorable indemnification it extends to its officers or directors, whether under the Debtor's bylaws, its certificate of incorporation, or otherwise, and no reduction or termination in any of the benefits provided under any such indemnities shall affect the benefits provided to Force 10 and the CRO. The CRO shall be covered as an officer under the Debtor's existing director and officer liability insurance policies if any. The Debtor shall also maintain any such insurance coverage, if any currently exists, for the CRO for not less than two years following the date of the termination of such officer's services hereunder. The attached indemnity provisions are incorporated herein and the termination of this agreement or the engagement shall not affect those provisions, which shall survive termination. The provisions of this section 8 are contractual obligations and no change in applicable law or the Debtor's charter, bylaws, or other organizational documents or policies shall affect the CRO's or Force 10's rights hereunder.

10.   CRO as Officer of the Debtor.

Notwithstanding anything herein to the contrary, Force 10 hereby agrees that, without the consent of the Board of Directors of the Debtor, Force 10 will not substitute any party for to serve as CRO of the Debtor; provided, however, that nothing herein shall prohibit Force 10 from staffing its engagement with personnel in addition to the CRO.

**/signatures on the next page/**

Case: 16-31367    Doc# 44    Filed: 06/02/17    Entered: 06/02/17 ...
35

If this Agreement is acceptable to you, kindly sign the enclosed copy to acknowledge your agreement with its terms.

**Force Ten Partners, LLC,** a Delaware limited liability company

By:     Nicholas Rubin
Its:     Member

Accepted and Agreed:

**XS Ranch Fund VI, LP**, a, Delaware limited partnership

By:  XF Ranch VI Manager, LP
Its:  General Partner
    By:  Coast Range Investments, LP
    Its:  General Partner

    By:     James Foster
    Its:     Manager

_____, individually and as the authorized Officer of the Debtor solely for the purposes of Paragraph 10 of this Agreement.

Case: 16-31367   Doc# 44   Filed: 06/02/17   Entered: 06/02/17 17:59:05   Page 22 of 35

# EXHIBIT "2"

**FORCE 10**
PARTNERS



# Look in to the eye of the storm.
# Look out to the sea and the sky.

LEARN MORE

# OVERVIEW

We are an advisory firm specializing in corporate restructuring, challenged businesses, litigation, and other special situations.

We work with the legal community and their clients to create advantage and financial return. Our unique insight is an amalgamation of accounting, finance, strategy, and gamesmanship -- all rooted in years of experience.

After 25 years of working at large firms, we formed Force 10 Partners to do it our way.

Case: 16-31367    Doc# 44    Filed: 06/02/17    Entered: 06/02/17 17:58:07    Page 23 of 35

# SERVICES

Force 10's deep subject matter expertise and technical financial aptitude is applied to litigation, bankruptcy and insolvency situations in the following roles:

- Corporate Restructuring Services
- Fiduciary Services
- Forensic Accounting

- Business Turnaround & Crisis Management
- Expert Testimony
- Investment Banking

# OUR TEAM

We apply the intellectual equivalent of mechanical advantage to deliver force amplified results. Learn more about each of us:

    

**Adam Meislik**

Bio → (/adam-meislik)

**Nicholas Rubin**

Bio → (/nicholas-rubin)

**Brian Weiss**

Bio → (/brian-weiss)

**Patrick Lacy**

Bio → (/patrick-lacy)

**Chad Kurtz**

Bio → (/chad-kurtz)

**Mike VanderLey**

Bio → (/mike-

# TRACK RECORD

Exhibit 2, Page 23

Case: 16-31367    Doc# 44    Filed: 06/02/17    Entered: 06/02/17 17:58:07    Page 24 of 35

HOME (/#HOME-SECTION)    OVERVIEW (/#OVERVIEW-SECTION)    SERVICES (/#OUR-SERVICES-SECTION)

FORCE 10
PARTNERS

TEAM (/#TEAM-SECTION)    RECORD (/#TRACK-RECORD-SECTION)    CONTACT (/#CONTACT-US-SECTION)

# ADAM MEISLIK

Office: (949) 357-2359 | (949) 357-2360
Mobile: (949) 281 6458
Email: ameislik@force10partners.com (Mailto: ameislik@force10partners.com)
LinkedIn (https://www.linkedin.com/in/adammeislik) | Download CV (/s/Adam-Meislik-CV-August-2016.pdf) | Download vCard
(/s/Meislik-vCard.vcf)

Adam leverages his accomplished career, spanning twenty-five years in restructuring and corporate finance, into various roles for his clients, including financial advisor, investment banker, CRO, expert witness, and fiduciary. His clients have run the gamut, including companies, bank lenders and other secured and unsecured creditors, buyers, sellers, bankruptcy counsel, and litigators, all in the context of workouts, insolvency proceedings, fundraising, M&A, and litigation. He provides expert testimony concerning transactions, intangible/intellectual assets, valuation, solvency, and reasonably equivalent value issues. Adam has a proven record in advising, structuring, and executing in excess of 100 mergers, acquisitions, capital transactions, restructurings, and litigation support assignments.

Prior to co-founding Force 10 Partners in 2016, Adam was a Senior Managing Director at GlassRatner Advisory & Capital Group and Co-President of GlassRatner Securities. Adam was also a Principal with XRoads Solutions Group. He spent half his career at CIBC World Markets and its predecessor, Oppenheimer & Company, where he led numerous multi-disciplinary teams on large capital markets, M&A, and restructuring assignments. He also co-established CIBC's Houston-based energy practice and helped establish CIBC's software practice. Prior to CIBC, Adam worked in the energy groups at Jefferies and Howard Weil.

Adam also serves as a director of public and private companies. Currently, he is board director of the twelve-year-old Orange County-based Sendio, an email security provider, and Evantix (business and assets sold to Optiv, May 2016).

Adam majored in finance and graduated with a bachelor of science degree in management from Tulane University in 1993. He holds FINRA Series 24, 79, and 62 licenses.

BACK TO TEAM (/#TEAM-SECTION)

© 2017 Force Ten Partners LLC

HOME (/#HOME-SECTION)   OVERVIEW (/#OVERVIEW-SECTION)   SERVICES (/#OUR-SERVICES-SECTION)

TEAM (/#TEAM-SECTION)   RECORD (/#TRACK-RECORD-SECTION)   CONTACT (/#CONTACT-US-SECTION)

# NICHOLAS RUBIN

Office: (949) 357-2364
Mobile: (949) 633-1628
Email: nrubin@force10partners.com (Mailto: nrubin@force10partners.com)

Download vCard (/s/Nicholas-Rubin-vCard.vcf)

Nicholas is a co-founder of Force 10 Partners. Prior, he was a Senior Managing Director with GlassRatner. Nicholas has over 20 years of combined leadership experience in capital markets, financial planning, commercial real estate, and corporate finance. He began his career at a leading international public accounting and auditing firm, where he worked with clients providing accounting, management accounting, and auditing services. In addition to his experience in accounting, he has served in many executive interim leadership roles as well as team leader in many business consulting assignments with a specialization in dispute resolution.

Nick has experience developing and leading teams that implement solutions designed to ensure optimal performance through financial planning, budgeting, profitability, and needs analysis. Nicholas's experience includes restructuring and corporate finance, including roles as a financial advisor and investment banker.

Nicholas works closely with clients to build comprehensive and strategic plans incorporating financial planning, consolidation, infrastructure, management reporting, and business intelligence to support growth. He has managed clients and businesses in the U.S., China, Hong Kong, Israel, and South Africa. His clients include corporations, banks, lenders and other secured and unsecured creditors, buyers, sellers, bankruptcy counsel, and litigators.

Nicholas holds a bachelor of commerce degree in financial and management accounting, auditing, business management, marketing, and finance from the University of Port Elizabeth, South Africa.

( BACK TO TEAM (/#TEAM-SECTION) )

FORCE 10 PARTNERS, 20341 SOUTHWEST BIRCH STREET, SUITE 220, NEWPORT BEACH, CA,

92660  949 357 2360  CONTACT@FORCE10PARTNERS.COM (MAILTO:CONTACT@FORCE10PARTNERS.COM)

© 2017 Force Ten Partners LLC

Exhibit 2, Page 25

Case: 16-31367    Doc# 44    Filed: 06/02/17    Entered: 06/02/17 17:58:07    Page 26 of
35

HOME (/#HOME-SECTION)    OVERVIEW (/#OVERVIEW-SECTION)    SERVICES (/#OUR-SERVICES-SECTION)
TEAM (/#TEAM-SECTION)    RECORD (/#TRACK-RECORD-SECTION)    CONTACT (/#CONTACT-US-SECTION)

# BRIAN WEISS CPA, MBA

Office: (949) 357-2368
Mobile: (949) 933-7011
Email: bweiss@force10partners.com (Mailto: bweiss@force10partners.com)
Download CV (/s/BrianWeissCV.pdf) | Download vCard (/s/Brian-Weiss.vcf)

Brian specializes in advising public and private companies with complex transactions including business restructuring, crisis management, and acquisitions/divestitures. Brian focuses on in- and out-of-court business restructuring serving in various capacities, including financial advisor to both debtors and creditors, chief restructuring officer, plan/liquidating trustee, and expert witness.

Prior to co-founding Force 10 Partners in 2016, Brian was the principal of BSW & Associates, a firm he founded in 2006. Prior to 2006, Brian served as Vice President of Finance, North America for Tomy Co. Ltd. with consolidated revenues in excess of $1 billion. Brian successfully led the financial turnaround of the North America business unit prior to its merger with its largest competitor. Brian also served as Financial Controller for Jazz Semiconductor, a spin-off of Conexant Systems' semiconductor manufacturing operations through a joint venture with The Carlyle Group. Brian was responsible for preparing the company for an initial public offering, leading the acquisition due diligence process, structuring joint ventures/strategic investments, oversight of all finance, accounting, and reporting functions, and the company-wide implementation of the Sarbanes-Oxley Act.

Brian has also served in senior finance capacities for Avamar Technologies (acquired by EMC Corporation) and Flashcom, Inc. At Flashcom, Brian was responsible for preparing the company for an initial public offering, financial planning, leading the due diligence process for proposed strategic transactions, and managing the accounting department. Brian was also employed at PricewaterhouseCoopers LLP. He is a Certified Public Accountant and received his master's degree in business administration from the University of Southern California.

BACK TO TEAM (/#TEAM-SECTION)

FORCE 10 PARTNERS, 20341 SOUTHWEST BIRCH STREET, SUITE 220, NEWPORT BEACH, CA,
92660  949 357 2360   CONTACT@FORCE10PARTNERS.COM (MAILTO:CONTACT@FORCE10PARTNERS.COM)

© 2017 Force Ten Partners LLC

HOME (/#HOME-SECTION)    OVERVIEW (/#OVERVIEW-SECTION)    SERVICES (/#OUR-SERVICES-SECTION)

TEAM (/#TEAM-SECTION)    RECORD (/#TRACK-RECORD-SECTION)    CONTACT (/#CONTACT-US-SECTION)

# PATRICK LACY

Office: (949) 357-2349

Mobile: (949) 433-3915

Email: placy@force10partners.com (Mailto: placy@force10partners.com)

Patrick Lacy specializes in distressed M&A, valuation, complex litigation, bankruptcy, and specialty real estate assignments. Patrick has over six years of experience, having worked at GlassRatner Advisory & Capital Group prior to joining Force 10 Partners in 2016, advising clients on matters ranging from investment banking, including section 363 sales, to real estate workouts, complex litigation, and valuation. While at GlassRatner, Patrick was primarily responsible for managing and executing on M&A sale processes, due diligence, modeling financial performance, cash flow projections, valuation, and other analyses.

Patrick received his bachelor of science degree in finance from San Francisco State University.

BACK TO TEAM (/#TEAM-SECTION)

© 2017 Force Ten Partners LLC

Exhibit 2, Page 27

# CHAD KURTZ

Office: (917) 514-6500

Email: ckurtz@force10partners.com (Mailto: ckurtz@force10partners.com)

Chad specializes in insolvency matters, buy and sell side M&A transactions, and complex modeling/financial analysis. Chad works closely with clients to develop cash collateral forecasts, analyze and improve business operations/cost structures, prepare bankruptcy compliance forms, develop bankruptcy plan projections, and analyze creditor claims. Prior to joining Force 10, Chad worked at BSW & Associates. Chad also spent 10 years at Ernst & Young LLP, including serving as a Director in its Corporate Finance practice, where he led restructuring advisory engagements. In that capacity, Chad has represented debtors, secured lenders, and creditors' committees, advising on businesses that ranged from start-ups to Fortune 500 companies. He started his career with Ernst & Young's Audit department in New York City and ultimately transferred to the Los Angeles office, where he helped lead the West Coast restructuring group that was part of the Corporate Finance practice.

Chad received his MBA from New York University, Stern School of Business and his bachelor's degree from Williams College, and he is a CPA (inactive).

BACK TO TEAM (/#TEAM-SECTION)

© 2017 Force Ten Partners LLC

Exhibit 2, Page 28

Case: 16-31367    Doc# 44    Filed: 06/02/17    Entered: 06/02/17 17:58:07    Page 29 of 35

# MICHAEL VANDERLEY

Office: (949) 357-2360
Mobile: (415) 370-6395
Email:  mvanderley@force10partners.com (Mailto: ameislik@force10partners.com)
LinkedIn | Download CV | Download vCard

Michael is a Senior Advisor at Force 10. Michael is a career real estate and capital markets professional with an extensive background originating and asset-managing real estate equity and debt investments, plus over 15 years of advisory and consulting experience. He works with public and private sponsors, operators, investors and real estate dependent operating companies with respect to asset and portfolio-level transactions, debt and equity financings, restructurings and business combinations including joint ventures and M&A, and on strategic issues affecting enterprise value.

Over the course of his 30+ year career, Michael has led transactions involving every major real estate asset class and has originated, acquired, advised on or managed investment positions at every level of the capital structure and across the return spectrum from core to opportunistic. He has extensive special situations experience, having represented debtors, secured creditors, creditors' committees and equity interests in connection with numerous restructurings and Chapter 11 cases - - including leading and advising on financing and sale processes totaling over $5 Billion. In addition, Michael has served as testifying expert or consultant-to-counsel on engagements involving Chapter 11 interest rate and plan feasibility matters, leasehold valuation and damages, partnership disputes, underwriting procedures, loan servicing and administration, and real estate capital markets conditions.

Prior to Force 10, Michael was a Senior Managing Director at FTI Consulting where, as part of the Corporate Finance segment and member of the Real Estate Solutions group, he led the Real Estate Capital Markets practice within FTI Capital Advisors, LLC, an investment banking subsidiary of FTI. Michael joined the firm as a Managing Director in 2009.

Prior to joining FTI, Michael was Vice President and West Region leader for the Structured Finance division of Archstone. Previously, he held senior management positions at Essex Property Trust, Calyon Corporate and Investment Bank (a Credit Agricole Group subsidiary), as well as serving as Chief Investment Officer for a San Francisco-based real estate private equity firm focused on opportunistic and value-add investments. During the 1990s, Michael served as the senior west coast real estate professional for a national restructuring advisory boutique. He began his career in the real estate consulting division of Laventhol & Horwath.

Michael is a frequent speaker at industry conferences and seminars. His topics have included interest rate and capital markets trends, developments in real estate Chapter 11 cases, mezzanine debt and other junior financing structures, and distressed debt and special situation transaction flows. He has contributed to various articles and mixed-media presentations including, "Navigating the Structured Finance Waterfall: Smooth Sailing or a Barrel Ride over the Falls?", CRE Finance World, 2012.

Michael graduated with a B.S. in business administration, finance from Arizona State University. He is a member of the American Bankruptcy Institute, CRE Finance Council, Mortgage Bankers Association and Urban Land Institute.

( BACK TO TEAM (/#TEAM-SECTION) )

Exhibit 2, Page 29

92660   949 357 2360   CONTACT@FORCE10PARTNERS.COM (MAILTO:CONTACT@FORCE10PARTNERS.COM)

© 2017 Force Ten Partners LLC

- Freedom Communications (OC Register) ($175 mm Revenue)
- The Signature Towers (MGM/Turnberry JV) ($800 mm claims)
- Blue Bee, Inc.
- AirFastTickets, Inc. ($100m debt)
- Bacchus Development (30 office buildings, $70m in debt)
- Breckenridge Food Systems & Related Debtors (20+, 209 legal entities, $300m+ in debt, (John Gantes))
- In re: Randall Blanchard (individual Ch. 11)
- In re: Hamilburg (individual Ch. 11)
- In re: Shirley McClure (individual Ch. 11)
- Metropolitan Automotive
- RCR Plumbing & Mechanical ($250m in sales)
- IS West
- CyberDefender
- Renaissance Surgical Arts

### Creditor FA    ...

- Carl's Furniture
- AGE Refining
- Crystal Cathedral Ministries (Mega Church $50m in debt)
- Background Images
- Isayan (Individual)

### Fiduciary Roles    ...

- Delaware Chancery Court Receiver for AirFastTickets, Inc., a Delaware corporation with subsidiaries in Greece, Germany and the UK.
- AFT Responsible Party. Debtor in Possession. (1:15-bk-11951) in New York Southern District Bankruptcy Court.
- Receiver for Professional Healthcare Billing Services. California, Virginia and Wyoming LLCs (3 entities)
- TreFratelli, LLC, a Wyoming LLC
- Federal Court Appointed Receiver for John Wallace (individual)
- Bacchus Development & Related Debtors
- Internet Specialties West
- Breckenridge Food System (John Gantes)
- SR Restaurant Holdings Group (John Gantes)
- CIR Restaurant Holdings Group (John Gantes)
- Evantix
- Sendio
- Active Wallace Group

### Plan Agent / Trustee    ...

- Walldesign Liquidation Trust
- Auarsound Liquidating Trust
- Composite Technology Corporation & Related Debtors (4 entities)
- Internet Specialties West
- W/C Imports

### Investment Banking    ...

- Internet Specialties West
- Aloojian Enterprises
- Medical Capital remnant assets
- GSP Precision
- CyberDefender
- Evantix
- Novistar
- PetroleumPlace
- Caminus

### Valuation Related    ...

- Freedom Communications (The Orange County Register newspaper)
- Internet Specialties West
- United Prosperity Group
- CTC Corporation
- CyberDefender
- CIR Restaurant Holdings Group
- Aletheia Research and Management
- AirFast Tickets
- Morgan Drexen
- Aloojian Enterprises
- WallDesign Incorporated

Case: 16-31367    Doc# 44    Filed: 06/02/17    Entered: 06/02/17 17:58:07    Page 32 of 35

# EXHIBIT "3"

HOME (/#HOME-SECTION)   OVERVIEW (/#OVERVIEW-SECTION)   OUR SERVICES (/#OUR-SERVICES-SECTION)
TEAM (/#TEAM-SECTION)   RECORD (/#TRACK-RECORD-SECTION)   CONTACT (/#CONTACT-US-SECTION)

**FORCE 10**
PARTNERS

# MICHAEL VANDERLEY

Office: (949) 357-2360
Mobile: (415) 370-6395
Email: mvanderley@force10partners.com (Mailto: ameislik@force10partners.com)
LinkedIn | Download CV | Download vCard

Michael is a Senior Advisor at Force 10. Michael is a career real estate and capital markets professional with an extensive background originating and asset-managing real estate equity and debt investments, plus over 15 years of advisory and consulting experience. He works with public and private sponsors, operators, investors and real estate dependent operating companies with respect to asset and portfolio-level transactions, debt and equity financings, restructurings and business combinations including joint ventures and M&A, and on strategic issues affecting enterprise value.

Over the course of his 30+ year career, Michael has led transactions involving every major real estate asset class and has originated, acquired, advised on or managed investment positions at every level of the capital structure and across the return spectrum from core to opportunistic. He has extensive special situations experience, having represented debtors, secured creditors, creditors' committees and equity interests in connection with numerous restructurings and Chapter 11 cases - - including leading and advising on financing and sale processes totaling over $5 Billion. In addition, Michael has served as testifying expert or consultant-to-counsel on engagements involving Chapter 11 interest rate and plan feasibility matters, leasehold valuation and damages, partnership disputes, underwriting procedures, loan servicing and administration, and real estate capital markets conditions.

Prior to Force 10, Michael was a Senior Managing Director at FTI Consulting where, as part of the Corporate Finance segment and member of the Real Estate Solutions group, he led the Real Estate Capital Markets practice within FTI Capital Advisors, LLC, an investment banking subsidiary of FTI. Michael joined the firm as a Managing Director in 2009.

Prior to joining FTI, Michael was Vice President and West Region leader for the Structured Finance division of Archstone. Previously, he held senior management positions at Essex Property Trust, Calyon Corporate and Investment Bank (a Credit Agricole Group subsidiary), as well as serving as Chief Investment Officer for a San Francisco-based real estate private equity firm focused on opportunistic and value-add investments. During the 1990s, Michael served as the senior west coast real estate professional for a national restructuring advisory boutique. He began his career in the real estate consulting division of Laventhol & Horwath.

Michael is a frequent speaker at industry conferences and seminars. His topics have included interest rate and capital markets trends, developments in real estate Chapter 11 cases, mezzanine debt and other junior financing structures, and distressed debt and special situation transaction flows. He has contributed to various articles and mixed-media presentations including, "Navigating the Structured Finance Waterfall: Smooth Sailing or a Barrel Ride over the Falls?", CRE Finance World, 2012.

Michael graduated with a B.S. in business administration, finance from Arizona State University. He is a member of the American Bankruptcy Institute, CRE Finance Council, Mortgage Bankers Association and Urban Land Institute.

( BACK TO TEAM (/#TEAM-SECTION) )

Case: 16-31367   Doc# 44   Filed: 06/02/17   Entered: 06/02/17 17:58:07   Page 34 of
35

92660   949 357 2360   CONTACT@FORCE10PARTNERS.COM (MAILTO:CONTACT@FORCE10PARTNERS.COM)

© 2017 Force Ten Partners LLC

Exhibit 3, Page 33

Case: 16-31367    Doc# 44    Filed: 06/02/17    Entered: 06/02/17 17:58:07    Page 35 of
35